**SHEBESTER–BECHTEL, INC., and the State Insurance Fund, Petitioners,**

v.

**Gary HIGGINBOTTOM and the Workers' Compensation Court, Respondents.**

**No. 84480.**

Court of Appeals of Oklahoma,
Division No. 2.

Sept. 26, 1995.

Linda S. Foreman, State Insurance Fund, Oklahoma City, for Petitioners.

Karen J. Leonard and Don L. Wyatt, Wyatt, Austin & Associates, Ada, for Respondent.

## MEMORANDUM OPINION

BOUDREAU, Judge.

Employer, Shebester–Bechtel, Inc., appeals an order of the three-judge panel, awarding benefits to Claimant for permanent partial disability. The issue on appeal is whether the trial court erred in relying on the report of Claimant's expert—a report in which it is not clear whether Claimant's expert converted Claimant's shoulder injury to whole man impairment under the AMA Guides. Having reviewed the record and applicable law, we find that it did and reverse and remand for further proceedings.

On September 20, 1990, Claimant filed his Form 3 asserting he injured his shoulder September 10, 1990. In support of his claim of permanent partial disability, Claimant submitted the report of Laurence Altshuler, M.D. Dr. Altshuler determined that Claimant had a pre-existing "5% impairment to the *whole person*." (Emphasis added). He further found that Claimant suffered an additional "35% partial permanent impairment to the *whole person* " due to the September 10, 1990, accident. (Emphasis added). Dr. Altshuler stated that his rating was "based on Tables 10, 11, 13 and 19 of the AMA Guides To The Evaluation of Permanent Impairment, Third Edition."

Claimant also submitted a letter from David L. Holden, M.D., for historical purposes. In the letter Dr. Holden stated that Claimant "has a long term impairment to the upper extremity constituting 35%."

Employer, in turn, submitted the report of Gary L. Massad, M.D., who determined that Claimant suffered twenty percent permanent partial impairment to the right arm due to the September 10, 1990, injury. He converted this to twelve percent permanent partial impairment to the body as a whole. This amount was over and above any pre-existing disability. Finally, Dr. Massad stated that his examination and opinion were in compliance with the AMA Guides, except for scheduled members and impairment not covered by the Guides.

The trial court issued its order finding that Claimant sustained an accidental personal injury to the right shoulder arising out of and in the course of his employment. The court further found that, as a result of this injury, Claimant sustained thirty-five percent permanent partial disability to the body as a whole. Employer appealed this order to the three-judge panel. The panel affirmed the finding of thirty-five percent permanent partial disability, but amended the trial court's finding to say that the thirty-five percent was over and above any pre-existing disability. Employer appeals.

■ Employer asserts that the AMA Guides required Dr. Altshuler to convert Claimant's permanent partial shoulder impairment to whole man impairment. We agree. The Workers' Compensation Act provides that permanent impairment shall only be evaluated "in accordance with the latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the incident for which compensation is sought." 85 O.S.Supp.1994 § 3(11). According to section 3(11), the Guides "shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss." The shoulder is not a scheduled member under section 22(3). *See also* Rule 21 of the

Workers' Compensation Court Rules, 85 O.S.Supp.1994, Ch. 4, App.

■ It is clear that under the Act all impairments, except scheduled member impairment, are to be evaluated pursuant to the AMA Guides. The Guides consider the shoulder to be part of the upper extremity and provide that the upper extremity is "to be considered *a unit of the whole person.*" *See* "AMA Guides to the Evaluation of Permanent Impairment," p. 13 (3d ed. 1989). The Guides provide a chart whereby impairment of the upper extremity can be converted to impairment of the whole person. *Id.* at p. 20, Table 3.

■ It is unclear from Dr. Altshuler's report whether his rating of thirty-five percent is a rating which has been converted to whole man impairment under the Guides. Dr. Altshuler uses the phrase "partial permanent impairment to the whole person." He also states that his evaluation was made pursuant to Tables 10, 11, 13, and 19 of the Guides. However, he does not state that his evaluation was done in compliance with Table 3 of the Guides, which converts impairment of the upper extremity to impairment of the whole person. We find that Dr. Altshuler should have converted the shoulder impairment to whole man impairment pursuant to the Guides.

Claimant asserts that shoulder impairments need not be converted to whole man impairment because they fall within the "other cases" portion of section 22 of the Workers' Compensation Act. Section 22(3) establishes a schedule of compensation for permanent partial disability. It establishes the maximum number of weeks which may be paid to a claimant for the loss or loss of use of certain scheduled members, i.e., thumb, finger, toe. For example, a claimant who loses a hand or totally loses the use of a hand is entitled to be paid for a maximum of 200 weeks. The partial loss of use of a hand is evaluated as a percentage of 200 weeks.

Section 22(3) also provides for non-scheduled members in a subsection entitled "Other Cases," which provides as follows:

> Other Cases: In all other classes of disabilities, excluding only those heretofore referred to in paragraph 3, which disabilities result in loss of use of any portion of an employee's body, and which disabilities are permanent in quality but partial in character, disability shall mean the percentage of permanent impairment. The compensation ordered paid shall be sixty-six and two-thirds percent (66⅔%) of the employee's average weekly wage for the number of weeks which the partial disability of the employee bears to five hundred (500) weeks.

■ We agree with Claimant that an injury to the shoulder falls within the "other cases" provision of section 22(3) *for the purpose of determining the number of weeks of compensation to which a claimant may be entitled.* In other words, the provision mandates that the length of Claimant's compensation as a result of the impairment to his shoulder is to be calculated as a percentage of 500 weeks. However, the "other cases" provision does not address the issue of whether a shoulder is to be considered a part of the upper extremity for the purpose of converting to whole man impairment. Section 22(3) provides no support for Claimant's argument.

The AMA Guides required Dr. Altshuler to convert Claimant's shoulder impairment to whole man impairment. We are unable to determine from the record before us whether he converted as required. Accordingly, we reverse and remand to the trial court with directions to conduct an evidentiary hearing to determine whether Dr. Altshuler's finding of impairment was converted to whole man impairment. If it was not converted as required, the trial court should convert according to Table 3 of the Guides. If it was so converted, the finding of thirty-five percent permanent partial disability shall stand.

REVERSED AND REMANDED WITH INSTRUCTIONS.

TAYLOR, P.J., and REIF, J., concur.